**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Durell Mapp,<br><br>      Plaintiff,<br>  v.<br><br>Dick's Sporting Goods, Inc. and Gary Tomlin,<br><br>      Defendants. | Case No. 2:26-cv-00668-RMG<br><br><br>**ORDER AND OPINION** |

This matter is before the Court on the Report and Recommendation ("R&R") of the United States Magistrate Judge. (Dkt. No. 11). The R&R recommends that Defendants Dick's Sporting Goods, Inc. ("DSG") and Gary Tomlin's ("Tomlin" and collectively "Defendants") Motion to Dismiss, or in the Alternative to Compel Arbitration (Dkt. No.4) be granted so that the parties can arbitrate. (Dkt. No. 11). Plaintiff filed objections (Dkt. No. 15), and Defendants replied (Dkt. No. 16). For the reasons set forth below, the Court adopts in part and declines to adopt in part, the R&R as the Order of the Court and grants in part and denies in part Defendants' Motion.

## I.    Background

On January 8, 2026, Plaintiff filed this employment suit in the Court of Common Pleas, County of Charleston, State of South Carolina. He brings claims against his former employer DSG and former supervisor Tomlin, alleging racial discrimination, hostile work environment, and retaliation in violation of Title VII and 42 U.S.C. § 1981, and asserting state-law-based claims of wrongful discharge in violation of public policy and intentional infliction of emotional distress. (Dkt. No. 1-1). On February 17, 2026, Defendants removed the case to this Court on the basis of federal question jurisdiction. (Dkt. No. 1).

Thereafter, Defendants moved to dismiss and compel arbitration citing Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), 12(b)(6), and the Federal Arbitration Act ("FAA"). (Dkt. No. 4). Defendants assert that Plaintiff entered into an arbitration agreement that covers Plaintiff's claims. *Id.* Plaintiff opposed the motion, arguing that the arbitration agreement fails to satisfy the basic requirements of an enforceable contract. (Dkt. No. 5). Specifically, Plaintiff argues that he did not agree to arbitrate, and in the alternative if he did, that the arbitration agreement is unconscionable. *Id.*

After reviewing Defendants' Motion, Plaintiff's response, and the applicable law, the Magistrate Judge recommended granting Defendants' Motion. (Dkt. No. 11).

Upon consideration of Plaintiff's objections to the R&R and Defendants' reply, the Court adopts the R&R in its entirety.

## II.    Legal Standard

### A. Report and Recommendation

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber,* 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of an objection, the court reviews the Report for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.,* 416 F.3d 310, 315 (4th Cir. 2005) ("[I]n the absence of a timely filed objection, a district court need not conduct a *de*

*novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

**B. Motion to Compel Arbitration under the FAA**

Once a litigant moves to compel arbitration under the FAA, 9 U.S.C. §§ 1 *et seq.*, the district court determines whether a matter should be resolved through arbitration depending on (1) whether a valid arbitration agreement exist and (2) whether the dispute falls within the substantive scope of the arbitration agreement. *AT&T Tech. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986). The Supreme Court has consistently encouraged a "healthy regard for the federal policy favoring arbitration." *Levin v. Alms and Associates, Inc.*, 634 F.3d 260, 266 (4th Cir. 2011).

"Even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997). Section 4 of the FAA requires the district court to "decide whether the parties have formed an agreement to arbitrate." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 n.9 (2019). The question of whether an arbitration agreement has been formed is one of contract law, and ordinary state law principles apply. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). When a party "unequivocally denies 'that an arbitration agreement exists,' that party bears the burden of coming forward with "sufficient facts" to support her position. *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 234. The standard to decide whether the party has presented "sufficient facts" is "akin to the burden on summary judgment," and the court may consider matters outside the pleadings. *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015). The trial provision of Section 4 is invoked only where "the record reveals a genuine dispute of material fact 'regarding the existence of an agreement to arbitrate.'" *Berkley Cnty. Sch. Dist.*,

3

944 F.3d at 234. Where there is no genuine dispute of material fact an agreement exists, the court will compel arbitration.

## III.    Discussion

In March 2021, Plaintiff started working for DSG. (Dkt. No. 1-1 at 3). On August 14, 2024, DSG sent an email notice to its employees, including Plaintiff, stating:

> On Oct. 3, 2024, DICK'S Sporting Goods will grant annual equity awards to eligible teammates. As a condition of receiving this equity grant, you may be asked to sign an arbitration agreement
>
> Since 2021, all newly hired teammates in our stores, DCs and at the CSC have signed an arbitration agreement; we are now extending these agreements to all equity eligible teammates to align our corporate practices across the enterprise. Under an arbitration agreement, one agrees to resolve claims against a company through private arbitration via an impartial third party rather than a court proceeding.
>
> You are welcome to consult with an attorney prior to signing the arbitration agreement. We are asking that you sign the agreement electronically via the Workday task below no later than Sept. 27, 2024.
>
> You will receive an email notification with a link to the Workday task on Sept. 19. A copy of the arbitration agreement is attached for your review. Please contact your HRBP with any questions.

(Dkt. No. 4-2 at 7).

The agreement attached to the email was titled, "MUTUAL AGREEMENT TO ARBITRATE CLAIMS." *Id.* at 9. The top of the final page of the attached agreement stated:

> YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND REVIEWED THIS AGREEMENT AND THAT BY SIGNING BELOW, ELECTRONICALLY SIGNING THIS AGREEMENT, OR ELECTRONICALLY ACCEPTING/AGREEING TO THIS AGREEMENT, YOU ARE AGREEING TO ARBITRATE COVERED DISPUTES UNDER THE TERMS OF THIS AGREEMENT, WHICH BINDS BOTH YOU AND THE COMPANY.

4

*Id.* at 14.

On September 19, 2024, the aforementioned Workday task was sent out to employees, including Plaintiff. (Dkt. No. 4-2 at 4, 16–19). At the top of the Workday task, there was a hyperlinked document identical to the one sent in the August 14 email. *Id*. At the bottom of the Workday task, there was a Signature Statement which stated: "I have read, understood, and agree to all outlined in the Mutual Agreement to Arbitrate Claims." *Id.* Below the statement line was an was "I Agree" accompanied by a checkbox. *Id.* The Workday task also had an option to leave a comment. *Id*.

The record shows that on September 27, 2024, Plaintiff executed the Workday task and left the following comment: "I don't totally understand the reasoning behind this and wish I had more time to think it through with legal advice." *Id.* at 21.

Plaintiff asserts in his objections that he did not accept the offer to arbitrate. (Dkt. No. 15). Specifically, he contends that (1) Defendants did not tell him that he was required to accept the agreement, (2) that the Workday task was an acknowledgment not an agreement, (3) that he did not understand the terms of the agreement, (4) that his sworn testimony shows he did not understand or accept the agreement, and (5) that he only agreed because of pressure from his boss. *Id.* at 5–10. Additionally, Plaintiff argues that the Magistrate Judge erred in denying Plaintiff's right to a jury trial on whether an arbitration agreement exists and erred in dismissing rather than staying the case. *Id.* at 9–12.

After careful review of the record, the R&R, and Plaintiff's objections, the Court finds that the Magistrate Judge ably addressed the issues and correctly concluded that a binding contract to arbitrate the disputes in this case exists. The Court address Plaintiff's objections below.

*First*, Plaintiff objects to R&R because he claims that "the August 14, 2024, communication did not state that Plaintiff was required to agree to arbitration." *Id.* at 5. To that extent, he argues that the agreement lacks consideration because "language did not clearly state that continued employment, the equity award, or any other benefit depended on Plaintiff's waiver of his right to a jury trial." *Id.* However, a review of the record refutes this argument. The August 14 email stated "[a]s a condition of receiving th[e] equity grant, you may be asked to sign an arbitration agreement. . . . "We are asking that you sign the agreement . . . no later than Sept. 27, 2024." (Dkt. No. 4-2 at 7). The Workday task also explicitly stated: "[a]s a condition of receiving your next equity grant, you are being asked to sign an arbitration agreement." *Id*. at 16. As such, Plaintiff's contention that the August 14 email did not state that the equity award depended on agreeing to arbitrate fails. Moreover, as to Plaintiff's larger argument that the arbitration agreement lacks consideration, this argument also fails as a matter of law. *See O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) ("A mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement." (citing *Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 300 (S.C. 1996))). Thus, the Magistrate Judge did not err because the email explicitly requested that Plaintiff sign the agreement.

*Second*, Plaintiff objects to R&R because he argues that the Workday task functioned as an acknowledgement, not an agreement. To support his argument, he points to the ambiguity of the "I agree" option and the lack of a decline or receipt only option. (Dkt. No. 5–8). To this extent, Plaintiff argues that the Magistrate judge erred by relying so heavily on *Dhruva v. CuriosityStream, Inc*., 131 F.4th 146, 155 (4th Cir. 2025). Plaintiff instead urges this Court to look to *Marshall v. Georgetown Memorial Hospital*, 112 F.4th 211, 218–19 (4th Cir. 2024), for guidance.

The Fourth Circuit in *Marshall* and *Dhruva* discussed when a click could manifest agreement in the arbitration context stating, "a clear and conspicuous notice that a click . . . will be taken as assent." *Marshall*, 112 F.4th at 218–19 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022)). "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Dhruva*, 131 F.4th at 155.

Here the Workday interface presented a one-page task with clear, boldfaced headings— "Document," "Instructions," "Signature Statement," and "I Agree"—on an uncluttered background, with a conspicuous blue hyperlink to the Arbitration Agreement at the top of the page. (Dkt. No. 4-2 at 16–17). Similar to the plaintiffs in *Dhruva,* Plaintiff here did not need to "scroll down" or "go exploring" to locate the term of the agreement, and as such he had notice that clicking would constitute assent. *Dhruva*, 131 F.4th at 155. Additionally, the interface here does not resemble the 2020 interface rejected in *Marshall*, where the plaintiff just had to click submit without scrolling through the agreement. *Marshall*, 112 F.4th at 218–19. In fact, it bears resemblance to the 2016 interface in *Marshall*, which the Fourth Circuit held put the plaintiff on reasonable notice of the arbitration agreement. *Id.* Here, the arbitration agreement was conspicuously attached at the top of the page and Plaintiff manifested agreement by checking the "I agree" option. (Dkt. No. 4-2 at 16–17); *see also Dawodu v. MCM Prods. USA, Inc.*, No. CV DLB-25-3664, 2026 WL 322726, at *3–4 (D. Md. Feb. 6, 2026) (rejecting plaintiff's argument that she signed an acknowledgment that she had read the arbitration agreement but did not agree to its terms when the acknowledgment indicated that continuing employment signified assent to the agreement itself and the employee continued employment for two years after signing). The Court therefore finds that the Magistrate Judge did not err.

7

*Third*, Plaintiff objects to the R&R claiming there was no agreement because he wrote the comment "I don't totally understand the reasoning behind this and wish I had more time to think it through with legal advice" (Dkt. No. 4-2 at 21). The Magistrate Judge found that this comment was not sufficient to negate Plaintiff's agreement by checking the box. (Dkt. No. 11 at 13). Under South Carolina law, one entering into a written contract should read it and avail himself of every reasonable opportunity to understand its contents and meaning. *Jenkins v. CitiFinancial, Inc.*, No. 2:05-cv-1199-PMD-GCK, 2007 WL 9753133, at *6 (D.S.C. Jan. 16, 2007) (quoting *Maw v. McAlister*, 166 S.E.2d 203 (S.C. 1969)). Courts in this District have "repeatedly rejected arguments by parties that they should not be held to an agreement that they signed, but did not have or take the time to read and understand." *See e.g.*, *Beasenburg v. Ultragenyx Pharm. Inc.*, No. 2:22-CV-04022-BHH-JDA, 2023 WL 6638971, at *12 (D.S.C. Feb. 13, 2023), *adopted in*, 2023 WL5993169 (D.S.C. Sept. 15, 2023). Therefore, Plaintiff's comment that he did not understand the agreement does not invalidate it because he manifested his agreement by checking the box. Additionally, the text messages that Plaintiff attached to his opposition papers suggest that he consulted with a lawyer prior to signing the agreement. (Dkt. No. 5-1 at 2 ("My lawyer is giving me the final word today.")). As such, the Magistrate Judge correctly applied the law when concluding that the Plaintiff's comment does not sufficiently negate his manifestation of agreement by checking the box.

*Fourth*, Plaintiff objects to the R&R because he submitted sworn testimony that he did not understand the arbitration terms and as such no agreement can exist. (Dkt. No. 5-2). As already discussed, Plaintiff's comment is not enough to negate the agreement. *See Beasenburg*, 2023 WL 6638971, at *12. Moreover, Plaintiff does not offer any corroborating evidence, nor does he support his allegations with any other specific evidence. A party's self-serving statement cannot

by itself defeat summary a motion to compel arbitration. *Snow v. Genesis Eldercare Rehabilitation Servs., LLC*, 2023 WL 371085, at *3 (D.S.C. Jan. 24, 2023); *see also CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020) ("A party's self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment."). Accordingly, the Court concludes that Plaintiff's affidavit did not create a genuine dispute of fact as to Plaintiff's agreement to the arbitration agreement

*Fifth*, Plaintiff objects to the R&R because he claims there is no agreement because "the employer-created pressure for Plaintiff to complete the Workday task and the ambiguity of the Workday system's sole "I Agree" option." (Dkt. No. 14 at 5–9). He argues there was undue pressure to sign the agreement because Tomlin told Plaintiff that he had till the end of the day on September 27, 2024, to sign the agreement. *Id.* at 7. However, a review of the record rejects Plaintiff's contention. The initial email on August 14, 2024, informed Plaintiff that he would have until September 27, 2024, to review and agree to the Arbitration agreement. (Dkt. No. 4 at 7). Plaintiff did not have the agreement sprung on him at the last minute. He had over a month to review it and seek advice on it, and it appears that he did. (*See* Dkt. No. 5-1 at 2). As such, there was no employer-created pressure. *Hooters of Am., Inc. v. Phillips,* 39 F. Supp. 2d 582, 608 (D.S.C. 1998), *aff'd and remanded*, 173 F.3d 933 (4th Cir. 1999) ("Forfeiting future promotions upon a refusal to sign an arbitration agreement does not constitute a wrongful threat nor does it prove improper pressure overcoming [plaintiff's] volition." (citing *Phillips v. Baker,* 325 S.E.2d 533, 535 (S.C. 1985))). As to the ambiguity of the "I agree" option, this has already been discussed above, and the Court therefore rejects Plaintiff's argument.

Accordingly, the Court agrees with the Magistrate Judge that Defendants have produced record evidence that a valid agreement to arbitrate exists between the parties, which Plaintiff did in fact

9

electronically sign, and that the agreement covers the matter in dispute. The Court agrees that Plaintiff failed to produce material evidence challenging that finding. Consequently, the Court finds on this record that a valid and enforceable arbitration agreement existed between Plaintiff and Defendants. As such, the Court finds that a trial is not required because there is no genuine dispute as to whether Plaintiff agreed to arbitrate.

Under these circumstances the Court is required to stay or dismiss this case and compel arbitration. *See* 9 U.S.C. §§ 3, 4. In *Smith v. Spizzirri*, the Supreme Court ruled that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending § 3 of the FAA compels the court to stay the proceeding." 601 U.S. 472, 478 (2024). Here Defendants requested that this Court stay this case if it finds that dismissal is not appropriate. (Dkt. No. 4-1 at 18–19). Moreover, in his objections, Plaintiff requested that this Court stay rather than dismiss this action. (Dkt. No. 15 at 10–12). Thus, since parties have requested a stay, the Court will stay this case pending arbitration. Additionally, pursuant to the Supreme Court's recent holding in *Jules v. Andre Balazs Props.*, this Court notes that it retains jurisdiction to resolve motions to confirm or vacate the resulting arbitral awards. 146 S. Ct. 1209, 1223 (2026) ("A federal court with jurisdiction to stay claims pending arbitration under § 3 of the FAA has the same jurisdiction to resolve motions to confirm or vacate a resulting arbitral award.").

## IV.    Conclusion

For the reasons set forth above, the Court **ADOPTS IN PART AND DECLINES TO ADOPT IN PART** the **R&R** (Dkt. No. 11) as the Order of the Court. The Court **DECLINES TO ADOPT** the recommendation for dismissal and otherwise **ADOPTS** the R&R. Accordingly Defendants' Motion (Dkt. No. 4) is **GRANTED IN PART AND DENIED IN PART**. Defendants' Motion is **DENIED** regarding the request for dismissal of this case rather than stay

but otherwise it is **GRANTED**. Plaintiff is **COMPELLED** to arbitrate his claims against Defendants. This action is **STAYED**.

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

June 23, 2026
Charleston, South Carolina